**UNITED STATES v. 716 CASES, MORE OR LESS, ETC., DEL COMIDA BRAND TOMATOES et al.**

No. 3949.

United States Court of Appeals
Tenth Circuit.

Jan. 5, 1950.

John T. Grigsby, Washington, D. C. (Alexander M. Campbell, Assistant Attorney General, Cleon A. Summers, United States Attorney and John W. Crawford, Assistant United States Attorney, Muskogee, Okl., were with him on the brief; Vincent A. Kleinfeld and Edward K. Adelsheim, Washington, D. C., of counsel), for appellant.

No appearance or brief for appellee.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Pursuant to Section 304(a) of the Federal Food, Drug and Cosmetic Act, 52 Stat. 1040 et seq., 21 U.S.C.A. § 334(a), a libel of information was filed by the United States for the seizure and condemnation of 716 cases of canned food labeled in part "Del Comida Brand Tomatoes Contents 1 Lb. 3 Oz". The libel alleged that the food was adulterated within the meaning of 21 U.S.C.A. § 342(b) (2) in that a product containing water had been substituted wholly or in part for canned tomatoes; and that the product was also misbranded within the meaning of 21 U.S.C.A. § 343(g) (1) in that it failed to conform to the definition and standard of canned tomatoes as prescribed by Regulations 53.41(a) (1) promulgated by the Federal Security Administrator pursuant to 21 U.S.C.A. § 341. In their answer, as claimants, Alfred Whitten and Harold Whitten, doing business as Whitten Brothers Canning Company, Paris, Texas, admitted the allegations of adulteration and misbranding, but requested permission to relabel the food on the ground that it was wholesome and fit for human consumption, and that reprocessing the product into tomato puree, catsup or any other similar product would be extremely expensive.

Upon the pleadings, and after a pretrial hearing, the trial court found that the article, although misbranded and adulterated, was not adulterated within the meaning of 21 U.S.C.A. § 342(b) (2). It accordingly provided in the decree of condemnation that the article be released to the claimant for the purpose of truthful labeling. The Government has appealed from that portion of the decree which directed that the article be released to the claimant for relabeling.

Section 334(d) of the Act provides that the court may, under prescribed conditions, direct that the condemned article be delivered to the owner thereof to be destroyed or brought into compliance with the provisions of the Act under the supervision of an officer or employee. But nothing in this section or the Act authorizes the court to permit the introduction in interstate commerce of any article of food that is adulterated, though truthfully labeled.

Section 342(b) (2) provides that "A food shall be deemed to be adulterated * * * if any substance has been substituted wholly or in part therefor". The Government contends here that because of the added or substituted water, the product is adulterated and cannot therefore be introduced in interstate commerce, though truthfully labeled.

21 U.S.C.A. § 341 provides that "Whenever in the judgment of the Administrator such action will promote honesty and fair dealing in the interest of consumers, he shall promulgate regulations fixing and establishing for any food, under its common or usual name so far as practicable, a reasonable definition and standard of identity, a reasonable standard of quality, and/or reasonable standards of fill of container * * * *". It is conceded that because of the addition of water, the article falls below the standard of canned tomatoes prescribed by Section 53.41(a) (1) of regulations promulgated by the Administrator

pursuant to 21 U.S.C.A. § 341, Sec. 401 of the Act. But, it is argued by the claimants, that since the food is wholesome and fit for human consumption, it could be sold under correct labeling and the purchaser would therefore not be misled. The Government counters with the proposition that once an article has been condemned as adulterated, its contraband character cannot be cured by a truthful statement of the manner in which it is adulterated, and the fact that it is fit for human consumption is immaterial.

The test of adulteration within the meaning of the Act does not turn upon whether the article is non-injurious and fit for human consumption. The Act was not intended to be confined to misbranding and the addition of adulterated substances deleterious to the health of consumers. It provides protection to the consumer from "economic adulteration" by which less expensive ingredients are substituted, or the proportion of more expensive ingredients are diminished so as to make the commonly identified article inferior to that which the consumer would expect to receive when purchasing it, although not in itself deleterious. Federal Security Adm'r v. Quaker Oats Co., 318 U.S. 218, 63 S.Ct. 589, 87 L.Ed. 724, 158 A.L.R. 832; United States v. 36 Drums of Pop'n Oil, 5 Cir., 164 F.2d 250; United States v. 2 Bags, etc., 6 Cir., 147 F.2d 123.

The term "canned tomatoes" is certainly a common or usual name for a standard article, and concededly by the addition of the water, the article under seizure here falls below the standard of quality of canned tomatoes provided in Section 53.41 of regulations promulgated by the Federal Security Agency; and is adulterated in that a substance has been substituted wholly or in part therefor. The use of a substandard label does not raise the standard of identity to comply with the Act and regulations.

It thus becomes unnecessary to consider whether the article was also misbranded within the meaning of Section 403(g) of the Act, 21 U.S.C.A. 343(g) (1). The judgment is reversed.